**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:

**SETH FREEDMAN and LAURA**
**FREEDMAN,**

    Debtors.

**PHYLLIS ERSHOWSKY,**

      **Plaintiff,**

**v.**

**SETH FREEDMAN,**

      **Defendant.**

_____/

**CASE NO.: 08-28599-RBR**
**CHAPTER 7**


**ADV. PROC. NO. _____**


## COMPLAINT FOR DETERMINATION OF DISCHARGABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2)(A) AND (a)(4)

Creditor Phyllis Ershowsky ("Ershowsky"), by and through undersigned counsel, sues the Defendant, Seth Freedman (the "Debtor" or the "Defendant") and respectfully states:

1.     This is an adversary proceeding filed pursuant to Rule 7001(4), (6) and (9) of the Federal Rules of Bankruptcy Procedure seeking a determination that the debt that the Debtor owes to Ershowsky is nondischargable.

2.     This court has subject matter jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334(b).

3.     This matter is a core proceeding over which this Court can enter a final judgment pursuant to 28 U.S.C. § 157(b)(2)(G), (I), (J) and (O).  The proceeding has been referred to this

Court pursuant to District Court local Rule 87.2 and the District Court's General Order of Reference dated July 11, 1984.

4.      Venue is proper before this Court pursuant to 28 U.S.C. § 1409 as the Debtor's chapter 7 case, Case No. 08-28599-RBR, is pending before this Court.

5.      Plaintiff Ershowsky is an individual who resides in Lee County, Florida.

6.      The Defendant Debtor is an individual who resides in Broward County, Florida. The Debtor filed his Chapter 7 Case jointly with his wife (who is not a defendant herein) on December 5, 2008 (the "Petition Date").

7.      At all times relevant hereto, Ershowsky was an employee of a company that was known, in some form or another, as Image Marketing.  Sometime in 2002, the Defendant purchased Image Marketing from the previous owners, Darlene and George Cecil (the "Cecils").

8.      While the Cecils owned Image Marketing, Ershowsky did not have any employment contract, non-compete agreement, or any agreement with Image Marketing that would be binding on Ershowsky in the event of a sale or transfer of Image Marketing.

9.      In the summer of 2004, Ershowsky began contemplating leaving Image Marketing and opening her own company.  In August of 2004, Ershowsky informed the Defendant of her intentions.  When Ershowsky informed the Defendant of her intentions, Defendant asked her for 24 hours for an opportunity to present her with some sort of offer for Ershowsky to remain with Image Marketing.  Ershowsky agreed to listen to what the Defendant wished to present.

10.     Ershowsky was very successful in her position at Image Marketing. As the only marketing executive during most of her tenure, Ershowsky developed a strong client base that was essential to the continued success of Image Marketing. Without Ershowsky's continued

Case No.: 08-28599-RBR
Adv. Proc. No. _____

employment, Image Marketing would have been significantly less profitable, would have been worth substantially less, and may have failed.

11.     At all times after the Defendant purchased Image Marketing, he made it clear to Ershowsky that his goal was to build the business and sell it.

12.     Defendant subsequently made Ershowsky an offer as he indicated he would.  The offer consisted of an immediate $15,000.00 raise, annual raises of 10% thereafter and the opportunity to share in the profits upon the sale of Image Marketing, either as an owner or through some sort of profit sharing arrangement.  Ultimately, the parties entered into a Phantom Stock Agreement whereby Ershowsky was to be awarded shares of "phantom stock" depending on her tenure with Image Marketing.  In sum, for every year that Ershowsky remained with Image Marketing, she would be awarded 10% of phantom stock, up to a total of 50%.

13.     The apparent purpose of the phantom stock was to insure that Ershowsky remained with the company, thus preserving the Defendant's investment in and purchase of the company, while Ershowsky was provided with some comfort and confirmation that she would receive some portion of the profits of the sale of the company when it was sold—which the Debtor had indicated, as stated above, was always his intention.

14.     As part of the representations that the Defendant made to Ershowsky, Defendant represented that Image Marketing was worth $1 million.  Ershowsky believed this number to be reasonable because she had been told that the Defendant had purchased the business for over $900,000.00.  Defendant further indicated that he believed that the business could be built up to the point that it might sell for $2 million and that, even if the company did not grow and was sold for less, the return to Ershowsky could end up being somewhere between $400,000.00 and $500,000.00 depending on when the company was sold and how much of the phantom stock had

SLATKIN & REYNOLDS, P.A.
One East Broward Boulevard, Suite 609, Fort Lauderdale, Florida 33301 Telephone 954.745.5880

vested at the time of sale.   Defendant Freedman never indicated that Image Marketing owed any debts other than ordinary payables.

15.      The Phantom Stock Agreement does not give employees of Image Marketing any rights to review the books of the company.  Likewise, as an employee, Ershowsky had no rights to review the books and records or otherwise conduct any due diligence in order to determine whether or not the Defendant's representations that the company had no debt were accurate. Accordingly, Ershowsky reasonably relied on the representation of the Defendant that Image Marketing was free of debt.

16.      Moreover, Ershowsky would have never remained at Image Marketing had she not believed that she would receive a significant profit from the sale of the business.

17.      Notwithstanding the foregoing, the Defendant's representation that the company was free of debt was untruthful and a misrepresentation of the true financial condition of Image Marketing.

18.      When the Defendant purchased Image Marketing, the Defendant took out a loan through CIT Small Business Lending Corp., backed by the Small Business Administration. Upon information and belief, the stock of Image Marketing was pledged as collateral for this loan.

19.      Additionally, Defendant had given a note to the Cecils as part of the purchase price.

20.      On or about July 31, 2006, Defendant closed on a sale of the business of Image Marketing to a company known as Crab Key Holdings, LLC.  The sale price was $945,000.00. Defendant never informed Ershowsky of the pending sale, never provided Ershowsky with any information prior to the sale notwithstanding her interest in receiving profits of the sale pursuant to the Phantom Stock Agreement, and generally did not inform Ershowsky of any of the events

4

leading up to the sale.  Moreover, Ershowsky learned after the sale that Defendant had forged her signature to an employment contract that had been provided to the buyer as part of the sale.

21.    Under the Phantom Stock Agreement, 20% of Ershowsky's phantom stock had vested.  Accordingly, at the time of the sale, Ershowsky was entitled to 20% of the net proceeds of the sale of Image Marketing.

22.    The Defendant initially refused to provide Ershowsky with any information regarding the sale of the business.  Sometime after the sale was complete, Defendant provided Ershowsky a copy of the Closing Statement for the sale, with all numbers redacted other than the net cash that the Defendant had received at the time of the closing.  The Defendant further provided an alleged accounting—with no backup—of the cash proceeds, which indicated, according to the Defendant, that Ershowsky's interest in the Phantom Stock entitled her to payment of $21,936.00.  Defendant remitted this amount to Ershowsky.

23.    At some point shortly after paying the above amount, Defendant remitted an additional $1,678.10 to Ershowsky as the employer's share of Ershowsky's FICA obligation.  Accordingly, all Ershowsky has received on account of her phantom stock is $23,614.10.

24.    Based on Defendant's representations, Ershowsky's profits should have been significantly higher than what the Defendant calculated and paid her.  However, because the Debtor failed to inform Ershowsky that CIT was owed well over $500,000.00, and that he owed the Cecils on the note he gave them when he purchased the business, and in fact misrepresented to her that there was no debt, Ershowsky realized a significantly lower return than she would have if the Defendant had accurately represented the finances of Image Marketing.

25.    In addition to the foregoing, Ershowsky was a participant in Image Marketing's Simple IRA Retirement Plan (the "Plan").  In the Plan, Image Marketing was required to match

up to 3% of any employee contributions to the Plan.  Defendant was trustee of the Plan and owed a fiduciary duty to Ershowsky with regards to contributions to the Plan.

26.     Defendant failed to pay, either intentionally or otherwise, the required employee match for 2005 and the portion of 2006 that Defendant owned Image Marketing.  The missed payments total $4,448.64.  Ershowsky complied with the various Florida Statutes entitling her to treble damages as to the missed payments due to the Defendant's failure to pay the required amounts.

27.     Defendant also failed to remit $851.97 to Ershowsky that was owed as unpaid reimbursements for business expenses.

28.     Ershowsky has retained counsel to represent her with her dispute with Defendant and has agreed to pay said counsel a reasonable fee for the legal services provided to Ershowsky.

29.     Ershowsky had previously filed suit against Defendant.  Attached hereto as Exhibit "1" is a copy of the Amended Complaint Ershowsky previously filed in the Circuit Court in and for the 20th Judicial Circuit, Lee County, Florida.  To the extent necessary, any allegations set forth in the Amended Complaint that support the allegations contained herein are adopted as if set forth herein.

## COUNT I—DETERMINATION THAT DEBT IS NOT DISCHARGABLE PURSUANT TO 11 U.S.C. § 523(a)(2)(A)

30.     The allegations of fact contained in paragraphs 1 through 29 are adopted as if fully set forth in this paragraph.

31.     This is an action requesting a determination that the debt of the Debtor Defendant to Ershowsky, as reflected in the is excepted from the Debtor's discharge and is not dischargeable, should the Debtor receive a discharge, pursuant to 11 U.S.C. § 523(a)(2)(A).

32.     Ershowsky is a creditor of the Debtor.

SLATKIN & REYNOLDS, P.A.
One East Broward Boulevard, Suite 609, Fort Lauderdale, Florida 33301 Telephone 954.745.5880

Case No.: 08-28599-RBR
Adv. Proc. No. _____

33.     The Debtor incurred the debt to Ershowsky under false pretenses, a false representation or actual fraud.

34.     Ershowsky has been damaged by the Debtor's false representation or actual fraud.

WHEREFORE, for the reasons stated herein, Ershowsky requests the Court enter judgment in its favor and against the Debtor determining that the debt from the Debtor to Ershowsky is nondischargeable, that Court award judgment for Ershowsky for its costs and attorney's fees in prosecuting this action and that the Debt that is not discharged includes Ershowsky's costs and attorney's fees in prosecuting this action as well as grant any further relief the Court deems proper under the circumstances.

## COUNT II—DETERMINATION THAT DEBT IS NOT DISCHARGABLE PURSUANT TO 11 U.S.C. § 523(a)(4)

35.     The allegations of fact contained in paragraphs 1 through 29 are adopted as if fully set forth in this paragraph.

36.     This is an action requesting a determination that the debt of the Debtor to Ershowsky, is excepted from the Debtor's discharge and is not dischargeable, should the Debtor receive a discharge, pursuant to 11 U.S.C. § 523(a)(4).

37.     Ershowsky is a creditor of the Debtor.

38.     The Debtor was a fiduciary of Ershowsky with relation to the retirement plan.

39.     The Debtor committed fraud while acting in the fiduciary capacity referenced above.

40.     The debt incurred by the Debtor includes treble damages and Ershowsky's attorney's fees in prosecuting this action, as well as any fees she incurred in prosecuting the action originally filed in state court..

SLATKIN & REYNOLDS, P.A.
One East Broward Boulevard, Suite 609, Fort Lauderdale, Florida 33301 Telephone 954.745.5880

WHEREFORE, for the reasons stated herein, Ershowsky requests the Court enter judgment in its favor and against the Debtor determining that the debt from the Debtor to Ershowsky is nondischargeable, that Court award judgment for Ershowsky for its costs and attorney's fees in prosecuting this action and that the debt that is not discharged includes Ershowsky's costs and attorney's fees in prosecuting this action as well as grant any further relief the Court deems proper under the circumstances.

I hereby certify that I am admitted to the Bar of the United States District Court, and that I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

**SLATKIN & REYNOLDS, P.A.**
Attorneys for Ershowsky
One East Broward Boulevard, Suite 609
Fort Lauderdale, Florida 33301
Telephone 954.745.5880
Facsimile 954.745.5890
rreynolds@slatkinreynolds.com

By: /s/ Robert F. Reynolds
      ROBERT F. REYNOLDS
      Fla. Bar No. 174823